UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONNIE CONLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:10-CV-396 RWS-NAB |
| | ) |
| JENNIFER SACHSE, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## REPORT AND RECOMMENDATION

This action is before the court upon Petitioner Ronnie Conley's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. 1] Respondent Jennifer Sachse filed a response. [Doc. 20]. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 27]. For the reasons set forth below, the undersigned recommends that the Petition for a Writ of Habeas Corpus be denied.

**I.  BACKGROUND**

Conley pled guilty to two separate charges of felony stealing. Resp't. Ex. A at 5-15, 16-28. He received concurrent sentences of five and seven years and placement in the long-term drug treatment program authorized under Mo. Rev. Stat. § 217.362. *Id*. Conley's plead guilty after reaching a plea agreement with the State of Missouri. Resp't. Ex. A at 10, 23-24. As part of the plea agreement, Conley agreed to plead guilty and the State agreed to recommend concurrent sentences of five and seven years on the stealing charges and that Conley be placed in the § 217.362 drug treatment program. *Id.*

1

The drug treatment program prescribed in § 217.362 allows non-violent offenders to participate in an institutional drug or alcohol treatment program for up to two years and execution of the offender's sentence is suspended pending completion of the program. Mo. Rev. Stat. § 217.362(2). If an offender successfully completes the program, the Board of Probation and Parole advises the sentencing court that the offender will be released within thirty (30) days and the sentencing court may allow the release or order the execution of the offender's sentence. Mo. Rev. Stat. § 217.362(3). If the offender does not successfully complete the program or is not cooperatively participating in the program, the offender will be removed from the program and the sentencing court will be advised of the same. Mo. Rev. Stat. § 217.362(4). If the offender fails to complete the program, he will serve the sentence originally ordered by the court and void the right to be considered for probation on that sentence. Mo. Rev. Stat. § 217.362(4).

After his sentencing, Conley was sent to the Department of Corrections' ("DOC") diagnostic center in Bonne Terre, Missouri. *Conley v. State*, 301 S.W.3d 84, 86 (Mo. Ct. App. 2010). While at the diagnostic center, Conley was involved in an altercation with another offender and the DOC did not place Conley in the drug treatment program. *Conley*, 301 S.W. 3d at 86. The DOC informed the sentencing court that Conley was no longer eligible for the drug treatment program and recommended that probation be denied, because Conley had caused a serious physical injury that had been referred for criminal prosecution. *Id.* After receiving the letter, the sentencing court's docket noted Conley's sentence was amended by rescinding the sentencing pursuant to § 217.362. *Id.*

Conley subsequently filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 24.035, which the trial court denied after an evidentiary hearing. Resp't Ex. A at 61-72, 73-79.

The Missouri Court of Appeals affirmed the trial court's denial of Conley's Rule 24.035 post-conviction motion. *See Conley*, 301 S.W.3d at 90.

In his Petition, Conley raises three grounds for relief.[1] First, Conley claims that the sentencing court denied him due process because the court did not insist that he be prescreened or prescreen him for eligibility in the long-term drug treatment program. Second, Conley claims that his guilty pleas were involuntary because the sentencing court misled him by failing to explain that he could lose the promised probation before entering the drug treatment program. Third, Conley claims that his guilty pleas were involuntary because the promise of probation was dependent upon his conduct before he arrived at the bargained-for program.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(d)(2).

In order for a claim to be considered to have been adjudicated on the merits by a state court, "the state court's decision must be a judgment—an adjudication—on a substantive issue—

---

[1] The undersigned takes judicial notice that Conley has filed two previous cases in this court pursuant to 42 U.S.C. § 1983 regarding the same subject matter. *See Conley v. Dep't of Corrections*, 4:08-CV-1513 DJS, 2009 WL 211963 (E.D. Mo. Jan. 23, 2009) (action dismissed for failure to state a claim); *Conley v. Dep't of Corrections*, 4:08-CV-1205 HEA, 2008 WL 4204215 (E.D. Mo. Sept. 11, 2008) (action dismissed for failure to state a claim).

3

the merits (as compared with a procedural or technical point)." *Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004), *cert. denied*, 543 U.S. 1189 (2005). Beyond these two considerations, "no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits." *Id.* Therefore, federal courts "must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court." *Id.*

Under § 2254(d)(1), "the phrase 'clearly established Federal law' . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (noting that the statutory phrase "clearly established Federal law" refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision" ). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent that the petitioner thinks the state courts acted contrary to or applied unreasonably. *Evenstad v. Carlson,* 470 F.3d 777, 783 (8th Cir. 2000). (citing *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006)); *Owsley v. Bowersox*, 234 F.3d 1055, 1057 (8th Cir. 2000). "When the federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1)." *Evenstad*, 470 F.3d at 783 (citing *Tunstall v. Hopkins*, 306 F.3d 601, 611 (8th Cir. 2002)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. It is not necessary for a state

court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. *Early v. Packer*, 537 U.S. 3, 8 (2002).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-13; *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001). The writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. *Williams,* 529 U.S. at 411. "[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry*, 532 U.S. at 792-93 (citing *Williams*, 529 U.S. at 410-11).

The Supreme Court has recognized that in determining whether a state court reasonably applied clearly established federal law, habeas courts must consider the specificity of the rule at issue. The court explained in *Yarborough v. Alvarado*:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (Kennedy, J., concurring in judgment)**.** The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually

similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." *Atley v. Ault*, 191 F.3d 865, 871 (8th Cir. 1999).

Additionally, § 2254(d)(2) provides a habeas remedy where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). For purposes of a habeas proceeding, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003) (citing 28 U.S.C. § 2254(d)(2), (e)(1)); s*ee also Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004).

## III. DISCUSSION

### A. Section 217.362 does not confer a liberty interest recognized under the Due Process Clause or by operation of state law.

In his first ground for relief, Conley contends that he was denied due process because he was not prescreened for eligibility in the long-term drug treatment program and his entry into the program was delayed. Conley's assertion is that this delay was prejudicial. The undersigned notes that Respondent contends that Conley has procedurally defaulted on this claim, because it was not addressed by Conley's in his post-conviction appellate brief. The undersigned disagrees. It is clear that Conley's Brief on his post-conviction appeal addressed whether the alleged failure to pre-screen him prior to sentencing was a due process violation.[2] Resp't Ex. C at 11, 13-16. Therefore, the merits of Petitioner's Ground 1 will be addressed by the Court.

---

[2] The Court notes that Petitioner could have used clearer phrasing in the Points Relied Upon portion of his post-conviction appellate brief, which was referenced by the Respondent. The substance of Petitioner's brief, however, does address pre-screening for eligibility into the drug treatment program.

"The Fourteenth Amendment's Due Process clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "In order to assert a due process violation, [Conley] must first establish he possessed a liberty interest in being pre-screened for eligibility and participation in the long term drug treatment program." *Mahurin v. Steele*, 4:06-CV-1652 JCH, 2007 WL 2885129 at *1 (E.D. Mo. Sept. 27, 2007) (§ 2254 action). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word liberty . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson*, 545 U.S. at 221. "A liberty interest arises if a statute, rule or policy contains specific substantive predicates and explicitly mandatory language. *Mahurin*, at *1. *Castle Rock*, 545 U.S. at 756. "A statute that lists with specificity the requirements an inmate must satisfy to be paroled by its nature would engender a liberty interest in parole." *Ingrassia v. Purkett*, 985 F.2d 987, 988 (8th Cir. 1993). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005). Section 217.362 itself does not create a liberty interest in probation or parole, because the sentencing court by the plain language of the statute has discretion to determine whether or not probation is appropriate. *Mahurin*, at *2.

Further, as recently stated by the Eighth Circuit in *Persechini v. Callaway*, "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed;" therefore, § 217.362(4) does not create a protected liberty interest in the drug abuse treatment program. 651 F.3d 802, 808. In *Persechini*, the offender was sentenced to fifteen years and to the substance abuse treatment program under § 217.362. *Id.* at 804. The offender was then terminated from the program for violating a DOC rule. *Id.* After his

termination from the program, the offender filed an action under 42 U.S.C. § 1983 alleging that his federal due process rights were violated. *Persechini*, 651 F.3d at 804. The *Persechini* court held that the offender's failure to successfully complete the program and the ensuing execution of sentence were consequences within the sentence initially imposed; therefore, termination from the program did not confer a liberty interest because it only meant that the offender had to serve the remainder of his original sentence under typical circumstances. *Id.* at 808.

In its consideration of Ground 1, the trial court[3] held that there was no dispute that Conley was eligible for the program and the DOC received Conley under the terms of the sentence and judgment without any objection as to his eligibility for the program. Resp't Ex. A at 78. Further, the trial court noted that there was nothing in the record that there was any delay of placing Conley in the program due to a question of eligibility. *Id.* The trial court also found that even if no pre-screening occurred Conley was not prejudiced, because he became ineligible for the program based on his own conduct, not by any action taken by the court or Conley's attorney. *Id.*

The Court of Appeals stated that Conley failed to present any evidence in support of his claims that the sentencing court failed to have him pre-screened for eligibility in the treatment program and because of the lack of pre-screening he remained at the diagnostic center for an inordinate amount of time. *Conley*, 301 S.W.3d at 90, n.6. The Court of Appeals denied Conley's claim on this basis. *See id.*

---

[3] The court notes that the Honorable Fred W. Copeland accepted Conley's guilty plea and rendered Conley's sentence. Judge Copeland's decisions will be referred to as the sentencing court. After Conley filed his Rule 24.035 motion, Judge Copeland on his own motion requested that the case be reassigned. Resp't Ex. A at 50, 53. The Missouri Supreme Court then assigned the Honorable Paul McGhee to adjudicate Conley's Rule 24.035 motion. Resp't Ex. A at 50. Judge McGhee's decision will be referred to as the trial court.

First, the undersigned agrees with the state court's finding that Conley has produced no evidence that he was not pre-screened. The evidence in this action shows that the statutory provisions of § 217.362 were followed. As outlined in the statute, the judge sentenced Conley to a term of imprisonment with the DOC and placement in the drug treatment program. Conley admitted at the evidentiary hearing on his state post-conviction motion that he knew he was going to a diagnostic center before entry into the drug treatment program. Resp't Ex. B at 30-31. After Conley's altercation with the inmate at the diagnostic center, the DOC followed the statutory procedure and notified the sentencing court that Conley was no longer eligible for the drug treatment program. *See* Mo. Rev. Stat. § 217.362(2),(4). Then, the sentencing court as authorized by statute, executed Conley's sentence. *See* Mo. Rev. § 217.362(4).

Next, the undersigned also finds that even if Conley had not been pre-screened, there is no liberty interest in being prescreened or participating in the program found in the Due Process Clause or § 217.362 itself that would allow Conley's claims for relief as outlined above. Moreover, he was not prejudiced by spending time at the diagnostic center like other new inmates sentenced within the DOC. As stated by the state courts in their post-conviction review, Conley's dismissal from the drug treatment program was due to his own behavior not any affirmative conduct by the court.

Conley has failed to demonstrate that the state court proceedings resulted in a decision contrary to or involving an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1)-(2). Therefore, the undersigned recommends that Conley's claim for relief under Ground 1 be denied.

B.     **Involuntariness of Guilty Pleas (Grounds 2 and 3)**

For his remaining grounds for relief, Conley asserts that his guilty pleas were involuntary because he was misled by the Court into pleading guilty due to the Court's failure to explain he could lose the promised probation prior to entry into the program and that the probation was dependent upon his conduct prior to entry into the program. Respondent contends that Conley's claims lack merit. The undersigned agrees.

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). "[T]he accused need only be informed of the direct consequence of the guilty plea. It is not necessary to attempt to inform the defendant of all the indirect or collateral consequences." *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984) (citations and internal quotations omitted). "The distinction between direct and collateral consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment." *Id.*

The trial court found that Conley's claims regarding the voluntariness of his guilty plea lacked merit, because the sentencing court informed movant that the court would follow the recommendations of the DOC relative to his release upon successful completion of the program. The trial court also found that Conley knew he would have to successfully complete the program to become eligible for probation after completing the program. The trial court determined that it could not be shown that Conley would not have pled guilty and gone to trial, but for his claims that he did not understand the full consequences of his guilty pleas.

In its discussion of the voluntariness of Conley's guilty pleas, the Missouri Court of Appeals correctly identified and applied U.S. Supreme Court precedent regarding the voluntariness of guilty pleas. *See Conley*, 301 S.W.3d at 87. The appellate court determined that Conley's assertion that the sentencing court misled him was not supported by the evidence, because the sentencing court would have to make a positive representation to Conley to mislead him and Conley was alleging that the sentencing court failed to explain something to him. *Id.* at 89. Further, the appellate court determined that there was no legal authority that a sentencing court has an affirmative duty to inform a defendant that he might be disqualified from participating in a treatment program before it starts. *Id.* at 90. The appellate court found that Conley's removal from the program was based on his own conduct, not any conduct by the sentencing court. *Id.*

The undersigned agrees with the state courts' determination in this action. The sentencing court informed Conley that he was being placed into the long-term drug treatment program and sentencing was pursuant to § 217.362. Resp't Ex. A at 38. Further, the sentencing court also stated that "the Court will follow any recommendations of the DOC relative to release of Mr. Conley upon his successful completion of the long-term drug treatment program." Resp't Ex. A at 38, 44. Conley knew that he had to successfully complete the program in order to receive probation. Resp't Ex. B at 26. Conley's termination from the program occurred after Conley received a major conduct violation, which as an act of violence, prevented his entry into the program reserved for non-violent offenders. If Conley had gone to trial, he would have faced at least fourteen years in jail on both stealing counts, with the possibility of additional time because he had two prior felony convictions. Resp't Ex. A at 3, 33; *see* Mo. Rev. Stat. §558.011(3)(the authorized term of imprisonment for a class C felony is a term of years not to

exceed seven years).  Based on the foregoing, Conley has not shown that he would not have pled guilty if the sentencing court had informed him that his eligibility would be affected by his conduct prior to entry into the drug treatment program.

Further, there was no affirmative duty for the sentencing judge to inform a non-violent offender that he could be removed from the drug treatment program for committing violent acts either before or during participation in the program.  As succinctly stated by the appellate court, Conley's position would "require a sentencing judge to anticipate all behavior a defendant might voluntarily engage in after his delivery to the DOC and warn him about how such conduct might affect his probation eligibility."  *Conley*, 301 S.W.3d at 90.  This is not required under any Supreme Court precedent.  Also, as noted by the state appellate court, this would be especially difficult to adhere to in cases where as in this case, the defendant has shown no prior predisposition to violence.  *Id.* at 90, n. 6.

The undersigned finds that Conley has failed to demonstrate that the state court proceedings regarding the voluntariness of his guilty pleas resulted in a decision contrary to or involving an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1)-(2).  Therefore, the undersigned recommends that Conley's claim for relief regarding Grounds 2 and 3 be denied.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned recommends that Conley's claims for relief should be denied.  The undersigned further finds the grounds asserted by Conley do not give rise to any issues of constitutional magnitude.  Because Conley has made no showing of a denial of a constitutional right, the undersigned does not recommend that a certificate of

appealability be issued in this matter.  *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED**.  [Doc. 1].

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Ronnie Conley for a Certificate of Appealability be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this <u>14th</u> day of December 2012.

<u>/s/ Nannette Baker</u>
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE